UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-298-GWU

STEVE W. REED, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Steve Reed brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

 Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Reed, a 42-year-old former torch cutter, equipment engineer, sales route driver, material handler and school bus driver with a high school equivalent education, suffered from impairments related to degenerative disc disease of the cervical spine, mild chronic obstructive pulmonary disease, an anxiety disorder, borderline intellectual functioning, and prescription medication abuse. (Tr. 13, 19). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he

retained the residual functional capacity to perform a restricted range of light level work. (Tr. 15, 19). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 20). The ALJ based this decision, in part, upon the testimony of a vocational expert. (Id.).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert A. Bentley Hankins included an exertional restriction to light level work restricted from a full range by such non-exertional restrictions as (1) an inability to turn the head in either direction back over the shoulder all the way to look behind; (2) an inability to more than occasionally reach overhead with the upper extremities; (3) a need to avoid exposure to respiratory irritants such as fumes, odors, dust, gases, and poor ventilation; (4) a limitation to simple, routine repetitive tasks not performed in a fast-paced production environment involving only simple work-related decisions and few workplace changes; (5) an inability to perform work requiring negotiation with others or to frequently engage in interaction with supervisors, (6) no more than superficial interaction with co-workers; and (7) an inability to interact with the general public. (Tr. 56-57). In response, Hankins identified a significant number of jobs which could

still be performed in the national economy. (Tr. 57-58). Therefore, assuming that the vocational factors considered by the expert fairly characterized Reed's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Kirpal Sidhu, a treating source, opined in November of 2008 that Reed would be able to sit, stand, lift and carry small objects, handle light objects, hear, speak and travel.[1] (Tr. 289). The ALJ's findings were essentially consistent with this opinion. Dr. James Bean examined the plaintiff in November of 2008 and found no permanent impairment, imposed no long-term physical restrictions and indicated that he could return to normal duty. (Tr. 292). Dr. Barry Burchett examined the claimant in February of 2009 and also imposed no long-term functional restrictions. (Tr. 319-326). Dr. David Swan reviewed the record in February of 2009 and indicated that Reed's alleged impairments concerning his back, neck, hands, and knees were not severe either individually or

---

[1] In September of 2008, Dr. Sidhu indicated that the plaintiff could not lift more than 15 pounds or perform overhead work. (Tr. 469). These are more severe limitations than those found by the ALJ. However, the doctor appears to have meant these as temporary restrictions because he went on to add if such work was not available, then the claimant should remain off work for three weeks at which point he could apparently return without limitations. (Id.).

in combination. (Tr. 327). These reports provide substantial evidence to support the administrative decision.

Dr. Abdulkader Dahhan, another treating physician, imposed extremely severe limitations on a February, 2010 assessment form including an inability to stand, sit, or lift. (Tr. 476). Reed argues that this report supports his claim of disabled status and the ALJ erred in rejecting this opinion of his treating source as binding. The ALJ noted a number of reasons why Dr. Dahhan's opinion should be rejected including the lack of objective findings contained in the doctor's own treatment records. (Tr. 18). An MRI scan of the cervical spine in September of 2008 revealed disc bulging at C3-C4, and C4-C5 with osteophyte formation but no disc herniation or focal cervical spinal cord signal abnormality. (Tr. 354-355). An October, 2008 x-ray of the plaintiff's right shoulder obtained by Dr. Dahhan was negative. (Tr. 345). The ALJ indicated that Dr. Bean's examination revealed no sign of motor, sensory or reflex loss. (Tr. 17, 292). The modest findings of Dr. Burchett were also cited and he reported that Reed was comfortable both sitting and supine and walked with a normal gait. (Tr. 18, 322). Dr. Burchett also found no evidence of tenderness or muscle spasm upon examination of the cervical spine. (Tr. 323). Sensation was intact and reflexes within normal limits. (Id.). The severe restrictions of Dr. Dahhan were also offset by the opinion of Dr. Sidhu who was also

a treating source. Therefore, under these circumstances, the ALJ had good reasons to discount the opinion of Dr. Dahhan.

Dr. Robert Johnson examined Reed in February of 2009 and opined that he was totally disabled. (Tr. 464). This is an opinion reserved to the Commissioner and would be not be binding on the ALJ under the federal regulations. 20 C.F.R. 404.1527(e)(1). The doctor also opined that the plaintiff should not look back over his shoulder, avoid jarring and vibrations, and reaching or working overhead. (Id.). To the extent that these are more severe physical restrictions than those found by the ALJ, Dr. Johnson was a one-time examiner whose opinion was outweighed by that of Dr. Sidhu, a treating source, and offset by that of Dr. Bean. Therefore, Dr. Johnson's opinion was properly rejected by the ALJ.

With regard to Reed's mental condition, the court notes that Reed did not seek treatment from a mental health professional. Dr. Sidhu, who treated him for physical problems, reported that the plaintiff 's mental status was unremarkable in November of 2008. (Tr. 288). This report does not suggest more severe mental impairments than those found by the ALJ.

Psychologist Karen Grantz examined Reed in December of 2008 and reported a diagnostic impression of an anxiety disorder. (Tr. 299). The plaintiff's Global Assessment of Functioning (GAF) was rated at 55. (Id.). Such a GAF suggests the existence of "moderate" psychological symptoms according to the

9

American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  Grantz opined that the plaintiff would be "markedly" limited in his ability to tolerate stress, "moderately" limited in his ability to respond appropriately to supervision, co-workers and work pressures, and "slightly" impaired in his ability to deal with simple, repetitive tasks and maintaining attention and concentration.  (Tr. 299-300).  The ALJ gave this opinion partial weight, rejecting the examiner's finding that the claimant would be "markedly" limited in dealing with stress because of the GAF indicating only "moderate" symptoms, and the psychologist's statement that his prognosis for improvement was "fair" even without treatment.  (Tr. 18-19, 300).  Psychologist Lea Perritt, a non-examining reviewer, indicated that the limitation concerning stress tolerance should be given little weight because it was not supported by evidence of record.  (Tr. 303).  The claimant has not argued that the omission of this restriction was erroneous.

Perritt and Psychologist Jay Athy each reviewed the record and opined that Reed would be "moderately" limited in dealing with detailed instructions, maintaining attention and concentration for extended time periods, interacting with the general public and responding to changes in the work setting.  (Tr. 301-302, 442-443).  The hypothetical question did not include a restriction concerning maintaining attention and concentration.  However, the examiner Grantz thought this area would only be

slightly impaired and the plaintiff has not raised this omission as an issue. Therefore, the court finds no error.

Reed asserts that the ALJ erred by failing to consider the combined effect of all of his impairments. The plaintiff has not presented specific examples of how the ALJ erred on this point. The undersigned has already noted that the hypothetical factors fairly characterized the claimant's condition. Thus, the ALJ would seem to have implicitly considered the combined effect of all of the claimant's impairments. Therefore, the court must reject Reed's argument.

Reed argues that his medical problems would prevent him from maintaining employment and, so, he could not meet the duration requirements for substantial gainful activity. The plaintiff cites the Ninth Circuit Court of Appeals case of Gatliff v. Commissioner of Social Security, 172 F.3d 690 (9th Cir. 1999). However, in Gatliff, the record contained considerable evidence that the claimant would not be able to maintain employment more than a couple of months and the ALJ had even acknowledged this fact. Gatliff, 172 F.3d at 692. In the present action, Reed has not identified similar evidence suggesting that he would not be able to maintain employment. Therefore, the court must reject the plaintiff's argument.

Reed argues that the ALJ did not properly evaluate his subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Reed was found to be suffering from a potentially painful condition.  However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs. (Tr. 18).  As previously noted, Dr. Bean found no physical impairments and released Reed to return to work.  (Tr. 292).  The doctor found no sign of sensory, motor or reflex abnormalities.  (Id.).  Dr. Swan, the medical reviewer,  did not believe that the evidence supported the existence of a "severe" physical impairment.  (Tr. 328).  Dr. Burchett also found no evidence of tenderness or muscle spasm upon examination of the cervical spine and also observed that sensation and reflexes were within normal limits.  (Tr. 323).  An MRI scan of the cervical spine revealed no disc herniation.  (Tr. 354-355).  An x-ray of the right shoulder was negative.  (Tr. 345).  Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain.  Therefore, the ALJ would appear to have properly evaluated Reed's pain complaints.

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 16th day of August, 2011.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**